■ ERNEST PANTORI et al., Appellants, v. WELSBACH CORP. et al., Respondents, and EISENSON ELECTRIC SERVICE COMPANY, INC., et al., Defendants. — Judgment, Supreme Court, New York County, entered February 23, 1973, dismissing the complaint, affirmed, without costs and without disbursements. This unfortunate plaintiff-appellant (the other, his wife, suing derivatively) was injured when, the lights having suddenly gone out at his job, his hammer struck a nail a glancing blow, causing it to fly up and strike his eye. Plaintiff's employer, an independent prime contractor, was never a party to this suit, but plaintiff has sued, among others, defendants-respondents Welsbach Corporation and WHN Construction Corporation, both also prime contractors; the former was in charge of supplying electricity under contract with the city, and the latter, performing construction work at the premises under alteration, being loosely termed " general contractor " although its sole relationship to the two defendant prime contractors was to co-ordinate progress of the work without exercising supervision thereof. Its two supervisors, charged with the job of co-ordination and integration of the work, gave no directions to plaintiff, a foreman for his employer, who received orders only from his coemployee, superintendent for that employer. Plaintiff himself decided where to work and the nature of that work. The owner of the building, Terrace on the Park, originally a party defendant but beneficiary of an unexplained discontinuance, maintained an office at the premises, and its president was in direct contact with each of the independent contractors. Welsbach, coping with a power maintenance problem, turned off the current, giving warning only to WHN, which, it appears, did not pass the warning on to plaintiff. Plaintiff charges both Welsbach and WHN with dereliction of duty in not having warned him that he might be deprived of light for his work. The issue is thus pinpointed: did either owe him a duty in this respect? Against this factual background, we agree with the Trial Justice that neither did, and that, whatever remedy plaintiff has, it is not against either of these two respondents. It is clear that the absence of supervisory relationship between plaintiff's employer, a prime contractor, and WHN, another prime contractor, gives rise to no duty whatever owed by the latter prime contractor to an employee of the former. (See *Reynolds* v. *Brady & Co.*, 38 A D 2d 746.) Nor is the situation any different vis-à-vis Welsbach in its relationship with plaintiff's employer, another prime contractor. Indeed Welsbach did everything possibly required of it in these circumstances by notifying the ostensible general contractor, WHN, of its intention to turn off the current. It was not required to advise plaintiff personally. " To require the defendant to attempt to learn the identity of each and every employee * * * who was and would be involved on this job, would not only be wholly unreasonable but it would in all probability prove both futile and impossible ". (*Storm* v. *New York Tel. Co.*, 270 N. Y. 103, 110.) Viewing the evidence, as we must, in the light most favorable to plaintiff, we find that, on the applicable law, there was no issue to go to the jury, and the complaint was properly dismissed. Concur — Stevens, P. J., McGivern and Markewich, JJ.; Kupferman and Murphy, JJ., dissent in the following memorandum by Murphy, J.: The complaint having been dismissed at the end of the entire case, plaintiffs are entitled to the benefit of the testimony and the reasonable inferences flowing therefrom. (*Meiselman* v. *Crown Hgts. Hosp.*, 285 N. Y. 389; *Pollard* v. *Trivia Bldg. Corp.*, 291 N. Y. 19.) On the day of the accident plaintiff Ernest Pantori (hereafter " Plaintiff "), an employee of an independent prime contractor, was engaged in attaching pieces of sheet metal to the walls of a corridor in a building

under alteration. Defendant W.H.N. Construction Corp. ("WHN") was the general contractor and defendant the Welsbach Corp. ("Welsbach") was under contract with the City of New York to maintain the street lights in the particular borough involved. At times it became necessary for Welsbach to turn off the power in the area. In accordance with previously established practice, Welsbach would give WHN's supervisor one day's notice of such fact so that WHN could notify the foremen of the other trades (including those not employed by WHN or its subcontractors) of such impending cessation of power. WHN would then notify Welsbach that appropriate notice had been given; and Welsbach would await such notice before pulling the switch. Concededly, WHN received advance notice of a shut-off on the critical day, although there is a dispute as to whether such notice was given one day or one-half hour before the event occurred and whether Welsbach received advice from WHN that all trades had received the appropriate warning. In any event, the power was turned off without prenotification to plaintiff, the area in which plaintiff was working was plunged into darkness and the nail he was striking received a glancing blow and "flew" into his eye. The trial court dismissed the complaint against Welsbach on the theory that its failure to warn plaintiff was mere nonfeasance for which it was answerable only to the city and against WHN because it owed no duty to provide plaintiff, an employee of an independent prime contractor, with a safe place to work. Upon the record before us, we believe the jury could have found either defendant, or both of them, liable to plaintiff. Welsbach does not seriously attempt to sustain the trial court's reason for dismissing the complaint against it. Instead, it relies on the fact that it gave sufficient notice to WHN's supervisors, thereby discharging its obligation to plaintiff. (See *Storm* v. *New York Tel. Co.*, 270 N. Y. 103.) WHN, on the other hand, relying on *Reynolds* v. *Brady & Co.* (38 A D 2d 746) argues that even if it received notice from Welsbach it was not required to give any warning to plaintiff since, as to plaintiff and his employer, it was not a general contractor and had no jural relationship. Following these arguments to their logical conclusion, then, we have the incongruous situation of Welsbach claiming it is exonerated from blame because it warned WHN, plaintiff's supervisor, and WHN saying it cannot be held responsible for failure to pass along said warning because it is not such overseer. The *Reynolds* case is not, in our opinion, applicable to the instant situation. WHN's obligation to plaintiff is not predicated solely on its obligation to furnish him with a safe place to work. Even if it owed him no such obligation, but gratuitously undertook to pass along the warning from Welsbach, it was required to perform such undertaking with reasonable care. (*Glanzer* v. *Shepard*, 233 N. Y. 236.) Welsbach, on the other hand, agreed (or so a jury could infer) not to turn off the power until it was notified that everyone had been warned. Testimony was introduced to the effect that it was not so notified. If Welsbach prematurely turned off the lights it, too, would be liable to plaintiff. In our view, plaintiff established prima facie causes of action against both defendants. Accordingly, the judgment dismissing the complaint should be reversed and a new trial directed.